**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| In re:<br><br>WARDMAN HOTEL OWNER, L.L.C.,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 21-10023 (JTD)<br><br>Pending in the United States Bankruptcy Court for the District of Delaware |
| MARRIOTT HOTEL SERVICES, INC.<br>10400 Fernwood Road<br>Bethesda, MD 20817<br><br>　　　Plaintiff<br><br>v.<br><br>WARDMAN HOTEL OWNER, L.L.C.<br>4747 Bethesda Avenue, Suite 200<br>Bethesda, MD 20814<br><br>PACIFIC LIFE INSURANCE COMPANY<br>700 Newport Center Drive<br>Newport Beach, CA 92660<br><br>　　　Defendants. | Adversary No.: 21-00043 |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1334 and 1452, Defendant, Pacific Life Insurance Company, a Nebraska corporation ("**Pacific Life**" or the "**Removing Defendant**") hereby removes Civil Action No. 483406-V, and all claims and causes of action, from the Circuit Court for Montgomery County, Maryland (the "**State Court Action**"), to the United States Bankruptcy Court for the District of Maryland (the "**Maryland Bankruptcy Court**"). The Maryland Bankruptcy Court has

authority, jurisdiction and venue over this action under 28 U.S.C. §§ 1334, 1452, and 156(e), District Court Local Rule 405.1, Federal Rule of Bankruptcy Procedure 9027, and Local Bankruptcy Rules 5001-2(e) and 9027-2.[1] As grounds for removal, the Removing Defendant respectfully states the following:

## SUMMARY OF THE ARGUMENT

1. The Maryland Bankruptcy Court has federal bankruptcy jurisdiction over the State Court Action because: (i) it involves claims against Wardman Hotel Owner L.L.C., a Delaware limited liability company ("**Hotel Owner**" or the "**Debtor**") and its property; (ii) Debtor is a debtor and debtor-in-possession in a chapter 11 bankruptcy case (the "**Chapter 11 Case**") filed on January 11, 2021, in the United States Bankruptcy Court for the District of Delaware (the "**Delaware Bankruptcy Court**")[2] and Debtor's property is property of its bankruptcy estate pursuant to 11 U.S.C. § 541; (iii) the claims asserted against Pacific Life are intertwined with Marriott's claims against the Debtor; and (iv) the resolution of the claims against Pacific Life will have an effect on the Debtor and the administration of its estate.

2. In the State Court Action, Marriott Hotel Services, Inc. ("**Marriott**") asserts breach of contract claims against both the Debtor and Pacific Life and has asserted claims against Pacific

---

[1] The *Memorandum Summarizing Procedures With Respect to Removal of Bankruptcy-Related State Court Actions to the United States District Court and United States Bankruptcy Court in Maryland* (the "**Memorandum**") confirms that the removal of action related to bankruptcy cases shall be direct to the Bankruptcy Court and that such removal papers shall be filed in the division of the Bankruptcy Court where the Bankruptcy-related-removed case is pending. *See Id.* at p. 3, *available at* https://www.mdb.uscourts.gov/files/RemovalManual.pdf.

[2] When referring to items filed in the Chapter 11 Case, Pacific Life will use the term "Del. Bankr. ECF No. ___".

Life based on Pacific Life's alleged tortious interference of Marriott's contract with the Debtor.[3] In response to the Complaint, Debtor has filed counterclaims against Marriott for breach of the same underlying contract, a hotel management agreement, the HMA (defined below), between Debtor and Marriott. A copy of the complaint (the "**Complaint**") and Counterclaim (the "**Counterclaim**") filed in the State Court Action are attached hereto respectively as **Exhibits A and B**. As of the filing of this Notice of Removal, Marriott has not filed an Answer to the Counterclaim; having obtained an extension of its obligation to answer the Counterclaim from the State Court.[4] The claims asserted by and against Marriott in the State Court Action "aris[e] under" and "relate to" the pending Chapter 11 Case. *See* 28 U.S.C. § 1334(b). Because federal bankruptcy jurisdiction exists over the State Court Action, removal pursuant to 28 U.S.C. § 1452 is appropriate and the parties to the State Court Action shall proceed no further in the Circuit Court of Montgomery County, Maryland.[5]

---

[3] For example, Marriott alleges that Debtor breached its management agreement with Marriott and that Pacific Life tortuously interfered with that agreement by causing the Debtor "to breach its contractual obligation to fund Working Capital." Complaint ¶¶ 86, 119-120.

[4] Pursuant to the State Court's Order dated January 20, 2021, Marriott's deadline to answer the Counterclaim is February 18, 2021. Pacific Life and the Debtor answered the Complaint on November 13, 2020 and November 16, 2020 respectively.

[5] Similarly, the State Court Action cannot proceed against Debtor because it is stayed under 11 U.S.C. § 362 and should not proceed against Pacific Life because Marriott's claims directly implicate Debtor's actions and property. *See In re Wardman Hotel Owner*, February 9, 2021 Bankruptcy Court Hearing Transcript p. 17 ("The Debtor cannot change the essential facts of this case. There's one primary asset which is real property in Washington, D.C. and the primary issues involved is value and sale of that real estate, and a dispute over a hotel management agreement governed by Washington, D.C. law.").

## BACKGROUND

### A. Pre-Bankruptcy Background

3. The Debtor owns the Marriott Wardman Park Hotel (the "**Hotel**"). The Debtor is 100% owned by PL Wardman Member, LLC, ("**PL Member**"), a Delaware limited liability company, and an affiliate of Pacific Life.

4. Pacific Life is the Debtor's senior secured prepetition Lender. Its relationship with the Hotel began in 2005 when Pacific Life provided a loan (the "**Original Pacific Life Loan**") to an entity owned by the JBG Companies and the CIM Group (collectively, the "**Original Hotel Owners**") to finance the Original Owners' acquisition of the Hotel. After the Original Hotel Owners acquired the Hotel, the Hotel experienced several years of poor performance.

5. As a result of the Hotel's poor performance, Pacific Life and the Original Hotel Owners entered into multiple modifications of the Original Pacific Life Loan. After a sale process pursued by the Original Hotel Owners failed to result in a sale acceptable to the parties, Pacific Life and the Original Hotel Owners agreed to a deleveraging recapitalization (the "**Recapitalization**").

6. Pursuant to the Recapitalization, Pacific Life and the Original Hotel Owners formed the Debtor. In connection with its formation, Debtor purchased the Hotel from the Original Hotel Owners through, among other things, a new loan from Pacific Life (the "**New Pacific Life Loan**") and Pacific Life's agreement to extinguish a portion of the balance on the Original Pacific Life Loan in exchange for equity in the Debtor. As part of the Recapitalization, the Original Hotel Owners and PL Wardman also contributed capital to the Debtor.[6]

---

[6] At the time of Debtor's bankruptcy filing, PL Member, an affiliate of Pacific Life, owned 100% of the interests of Debtor.

4

7. The Debtor and Marriott were parties to a long-term Hotel Management Agreement (the "**HMA**") governing Marriott's provision of services to the Debtor.

8. In connection with the New Pacific Life Loan, Marriott and Pacific Life entered into a new Subordination, Non-Disturbance and Attornment Agreement dated as of January 19, 2018 (the "**SNDA**").[7]

**B. Maryland State Court Action**

9. On September 8, 2020, Marriott commenced the State Court Action by filing the Complaint in the Circuit Court for Montgomery County, Maryland. The Debtor filed its Counterclaim on December 16, 2020.[8]

10. In the Complaint, Marriott asserts causes of action for, among other things: (i) Breach of Contract against the Debtor for an alleged breach of the HMA; (ii) Tortious Interference with Contract against Pacific Life resulting from the Debtor's alleged breach of its obligation to fund working capital requested by Marriott; and (iii) Breach of Contract against Pacific Life arising from disputed obligations pursuant to the SNDA and HMA.

11. Debtor's Counterclaim asserts claims against Marriott for, among other things: (i) Breach of Contract arising from Marriott's failure to fulfill its obligations under the HMA; (ii) Breach of the Covenant of Good Faith and Fair Dealing resulting from Marriott's invalid demands for working capital and abuse of discretion granted to it under the HMA; and (iii) Breach of Fiduciary Duty arising from Marriott's intentional, knowing, and wrongful acts in promoting its own interests to the detriment of the Debtor.

---

[7] In connection with the Original Pacific Life Loan, Marriott and Pacific Life entered into similar Subordination, Non-Disturbance and Attornment Agreements dated July 12, 2007, and August 22, 2007.

[8] Pacific Life filed its answer denying all claims asserted against it on November 13, 2020.

12. In connection with the State Court Action, Marriott requested and obtained a preliminary injunction against the Debtor compelling Debtor to pay Marriott's working capital demands. Of note, relevant to the "related to" nature of the State Court Action, in responding to the Debtor's contentions that it lacked funds to meet Marriott's unsupported working capital demands, Marriott maintained that "[i]f the Owner does not have the funds to pay its bills, it could pursue a bankruptcy." *Marriot v. Wardman Hotel Owner, L.L.C.*, Civil Action No. 483406-V, Circuit Court for Montgomery County, Maryland, *Reply Memorandum by Plaintiff Marriott Hotel Services, Inc. in Support of its Motion for a Preliminary Injunction and Other Appropriate Relief*, p. 2. Similarly, during the hearing on Marriott's request for a preliminary injunction, Marriott's counsel asserted, not less than six times, that the Debtor could file for bankruptcy. December 1, 2020 Maryland Hearing Transcript at 17:1-6; 265:20-25; 273:1-17; 275:19-22; December 2, 2020 Maryland Hearing Transcript at 82:2-7; 85:19-22.

### C. Owner's Chapter 11 Bankruptcy

13. On January 11, 2021 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 pursuant to Title 11 of the United States Code (the "**Bankruptcy Code**") in the Delaware Bankruptcy Court. No trustee has been appointed, and the Debtor remains a debtor-in-possession.

14. Although Marriott filed a motion seeking to transfer the Chapter 11 Case from the Delaware Bankruptcy Court to the Bankruptcy Court for the District of Columbia (the "**Marriott Venue Transfer Motion**") (Del. Bankr. ECF No. 59), the Delaware Bankruptcy Court denied the Marriott Venue Transfer Motion; concluding that "transferring venue is not necessary." *See* February 10, 2021 Transcript of the Oral Ruling Denying Motion to Transfer Venue at p. 7; February 11, 2021 Order Denying Motion to Transfer Venue (Del. Bankr. ECF No. 137). Notably,

in support of the Marriot Venue Transfer Motion, Marriott acknowledged that claims set forth in the State Court Action could "actually be litigated before Your Honor [the Delaware Bankruptcy Court]" when responding to a question from the Delaware Bankruptcy Court.  *See* February 9, 2021 Bankruptcy Hearing Transcript, at 63:17-64:4; *see also* p. 17:15-19 ("The Debtor cannot change the essential facts of this case. There's one primary asset which is real property in Washington, D.C. and the primary issues involved is value and sale of that real estate, and a dispute over a hotel management agreement governed by Washington, D.C. law.").

15. On the Petition Date, the Debtor filed the *Debtor's Motion Seeking Entry of an Order Rejecting Hotel Management Agreement, Effective as of the Petition Date* (the "**Rejection Motion**"). (Del. Bankr. ECF No. 6).  The Delaware Bankruptcy Court entered its Order Authorizing the Debtor to reject the HMA (the "**HMA Rejection Order**") (Del. Bankr. ECF No. 127).[9]

16. It is also noteworthy that, in the HMA Rejection Order, Marriott agreed that:

> Marriott must file claims against the Debtor in connection with the HMA or the rejection, breach or termination of the HMA in accordance with any claims bar date set by the Court, and the failure to file a timely claim shall forever prohibit Marriott from receiving any distribution on account of such claims from the Debtor's estate. For the avoidance of doubt, any claims Marriott may have against third parties, including non-debtor affiliates, for damages related to the termination of the HMA, are expressly preserved.

*See* HMA Rejection Order at ¶ 4.

17. Further, on January 26, 2021, Marriott filed the *Motion for the Authority to Exercise Rights of Recoupment, or, in the Alternative, Relief from the Automatic Stay to Exercise Rights to Setoff* (the "**Marriott Recoupment/Setoff Motion**") (Del. Bankr. ECF No. 62). Through the

---

[9] Marriott essentially did not oppose the Rejection Motion in its Limited Objection. Marriott instead requested that claims it might have against Pacific Life and the Debtor be preserved, and that was provided for in the HMA Rejection Order.

Marriott Recoupment/Setoff Motion, Marriott is seeking authority from the Delaware Bankruptcy Court to immediately and unilaterally exercise alleged recoupment or setoff rights to seize funds on deposit in the Debtor's Furniture, Fixtures, and Equipment account (the "**FF&E Reserve**"), which is property of the bankruptcy estate and specifically earmarked for capital improvements to the Hotel.  After acknowledging the Delaware Bankruptcy Court's core jurisdiction over the Marriott Recoupment/Setoff Motion, Marriott asserted that it has pre and postpetition claims against the Debtor based on the same relief sought in the State Court Action. For example, Marriott stated:

> Marriott has not been paid the estimated $5.4 million that it advanced to operate and maintain the Hotel and pay the Hotel's employees and vendors. Marriott will now need to pay an additional $11 million of estimated severance costs to the Hotel's employees. **These damages arise directly from the Debtor's continued refusal to meet its obligations under the HMA and its closure of the Hotel**.

*See* Marriott Recoupment/Setoff Motion at ¶ 35 (emphasis added).

18.    The Hearing on the Marriott Recoupment/Setoff Motion has not been scheduled based on Marriott's request that its motion be deferred to an evidentiary hearing in the Chapter 11 Case at a date to be determined by the Delaware Bankruptcy Court.

## GROUNDS FOR REMOVAL

A.    "Related To" Jurisdiction

19.    The State Court Action is subject to removal because the State Court Action is "related to" the Chapter 11 Case and the Debtor's bankruptcy estate. *See* 28 U.S.C. §§ 1334(b) and 1452(a). Specifically, under 28 U.S.C. § 1452(a) "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).   Under 28 U.S.C. § 1334(b), [the District Court] has original

jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Because the claims in the State Court Action are "related to" the Chapter 11 Case, removal is permitted by 28 U.S.C. § 1452(a) and 28 U.S.C. § 1334(b).

20. The Fourth Circuit has adopted the test set forth by the United States Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), for determining whether a civil proceeding conceivably could have any effect on the estate being administered in bankruptcy and, thus, is "related to" the bankruptcy case. *See Owens-Illinois, Inc. v. Rapid American Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997). "[U]nder the *Pacor* 'conceivable effect' test, 'related-to' jurisdiction exists if the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy. This includes a proceeding whose outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts the handing of the administration of the bankrupt estate." *In re Longview Power, LLC v. First Am. Title Ins. (In re Longview Power, LLC)*, 516 B.R. 282, 290 (Bankr. D. Del. 2014) (citations and quotation marks omitted).

21. Here, the State Court Action undoubtedly "relates to" the Chapter 11 Case and the administration of the Debtor's bankruptcy estate. First, in the Complaint, Marriott asserts claims directly against the Debtor and is seeking recovery from its bankruptcy estate. In response, the Debtor filed its Counterclaim, seeking monetary and non-monetary damages. The resolution of the State Court Action will directly affect Pacific Life because Pacific Life is the Debtor's largest creditor who is owed not less than $133 million.

22. Second, adjudication of the State Court Action will alter the Debtor's rights and liabilities. Even if the State Court Action were only to proceed against Pacific Life, the outcome

will inevitably have a significant impact on the administration of the Debtor's bankruptcy estate because, to establish that Pacific Life tortuously interfered with the HMA – by directing the Debtor to breach the HMA – Marriott must first prove that (i) the Debtor breached its obligations under the HMA; (ii) Marriott did not breach its obligations under the HMA; and (iii) Marriott is entitled to damages. These questions would be subject to inconsistent determinations unless they are decided a single time in the Delaware Bankruptcy Court.[10]

23. Third, because the HMA Rejection Order granted the Debtor's motion to reject the HMA and expressly provided that any claims by Marriott arising out the HMA, including its rejection, must be filed in the Delaware Bankruptcy Court, the correct forum in which the resolution of Marriott's HMA-related claims should proceed is the Delaware Bankruptcy Court. *See* HMA Rejection Order at ¶ 4.

24. Fourth, because Marriott has asserted that its right to manage the Hotel under the HMA cannot be disturbed,[11] the resolution of Marriott's contention will affect property of the Debtor's estate. In fact, the Debtor's Independent Manager has already testified that whether the Hotel is encumbered by the HMA affects the value of the Debtor's assets.[12] Thus, resolution of

---

[10] Similarly, even though a ruling in the State Court may not be binding on the Debtor (as the State Court Action is stayed as against the Debtor), because the resolution of Marriott's claims against Pacific Life will require extensive involvement of the Debtor to establish whether the Debtor breached the HMA, allowing the State Court Action to proceed will negatively affect the administration of the Chapter 11 Case by distracting the Debtor from maximizing value for all creditors. *See Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006) ("In light of the identity of interest between Calpine and Fireman's, Calpine will suffer irreparable harm if the Nevada Litigation continues through the risk of collateral estoppel and evidentiary prejudice, a drain on its estate due to its indemnification obligations to Fireman's and a significant burden and distraction of key employees from its restructuring efforts.")

[11] *See* Marriott Objection to Debtor's Financing Motion (Del. Bankr. ECF No. 30) ¶ 2.

[12] *In re Wardman Hotel Owner*, January 13, 2021 Bankruptcy Court Hearing Transcript pp. 30-31 ("And so when I asked what -- which of those ways to sell the property yielded the highest value, each and every one of those broker opinions, as they call them, indicated that the value of

Marriott's claims against Pacific Life will have an impact on the Debtor's options or freedom of action and will impact the handing of the administration of its bankrupt estate.

25. Finally, because the Marriott Recoupment/Setoff Motion directly implicates the HMA and the Counterclaims, by seeking to automatically setoff its disputed claim, the issues in the State Court Action are, again, directly raised in the Chapter 11 Case.

26. The satisfaction of the *Pacor* test is further reflected in the fact that Marriott's HMA-related claims at issue in the State Court Action are directly implicated in the Chapter 11 Case's claims allowance process. Therefore, the State Court Action is related to the Chapter 11 Case. *See e.g. Johnson v. Residential Funding Co., LLC*, 2011 U.S. Dist. LEXIS 11917, *12 (D. Md. Feb. 8, 2011) (declining to abstain where claims arose from violations of Maryland statutory and common law because to do so would expend judicial resources and claims were "related to" the bankruptcy case); *Broadhollow Funding, LLC v. Bank of Am., N.A. (In re Am. Home Mortg. Holdings, Inc.)*, 390 B.R. 120, 123 (Bankr. D. Del. 2008).

27. Thus, as set forth above, the State Court Action and each and every claim, cause of action and counterclaim asserted therein relates to chapter 11 of the Bankruptcy Code. Accordingly, removal pursuant to 28 U.S.C. § 1452 is appropriate under "related to" bankruptcy jurisdiction.

B. "Arising Under" Jurisdiction

28. Removal is also permitted based on "arising under" jurisdiction under 28 U.S.C. § 1452(a) and 11 U.S.C. § 1334(b). 28 U.S.C. § 157(b) provides that, "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising

---

the hotel was at its lowest when encumbered by the HMA that is in existence or that was in existence.")

11

in a case under title 11." 28 U.S.C. § 157(b)(2) specifies a list of core proceedings (arising under title 11). The claims and causes of action in the State Court Action constitute "core" matters in the following respects:

a. They are matters concerning the administration of the Debtor's bankruptcy estate (28 U.S.C. § 157(b)(2)(A));

b. They are matters concerning the allowance or disallowance of claims against the Debtor and its estate (28 U.S.C. § 157(b)(2)(B));

c. They are matters concerning counterclaims by the Debtor and its estate against persons filing claims against the estate (28 U.S.C. § 157(b)(2)(C));

d. They are proceedings that may determine orders to turn over property of the Debtor and its estate (28 U.S.C. § 157(b)(2)(E)); and

e. They are matters concerning other proceedings affecting the liquidation of the assets of the Debtor and its estate or the adjustment of the debtor-creditor relationship (28 U.S.C. § 157(b)(2)(N),(O)).

29. In the State Court Action, Marriott asserts claims against both the Debtor and Pacific Life. The thrust of Marriott's claims is that: (i) the Debtor is obligated to fund the Hotel's working capital pursuant to the HMA; and (ii) Pacific Life is liable for tortious interference by causing the Debtor to breach its obligations under the HMA. The determination of whether the Debtor breached the HMA will have significant and direct impact on the administration of the Debtor's estate, the bankruptcy proceedings and the liquidation of Debtor's assets. First, because Marriott has asserted its rights to manage the Hotel under the HMA cannot be disturbed,[13] the resolution of Marriott's contention will affect property of the Debtor's estate.[14] Second, because

---

[13]   *See* Marriott Objection to Debtor's Financing Motion (Del. Bankr. ECF No. 30) ¶ 2.

[14]   *See* footnote 10 above.

the HMA Rejection Order granted the Debtor's motion to reject the HMA and expressly provided that any claims by Marriott arising out the HMA or its rejection must be filed in the Delaware Bankruptcy Court by the applicable claims bar date, the correct forum in which Marriott's HMA-related claims should proceed is the Delaware Bankruptcy Court. *See* HMA Rejection Order at ¶ 4. Third, because the Marriott Recoupment/Setoff Motion directly implicates Marriott's HMA-related claims and the Counterclaim and the administration of the Debtor's bankruptcy estate, by asserting a unilateral right to offset the Debtor's property, the issues in the State Court Action are again directly raised in the Chapter 11 Case.

30. Because the State Court Action is comprised entirely of "core" matters, which must be resolved in the Delaware Bankruptcy Court's claims allowance process and because Marriott's claims may limit the Debtor's ability to maximize value for all stakeholders, the claims and causes of action brought in the State Court Action "arise under" title 11 and therefore confer original jurisdiction of the State Court Action in the District Court (and the Bankruptcy Court by reference from the District Court).

## TIMELINESS OF REMOVAL

31. The Debtor commenced the Chapter 11 Case January 11, 2021. Accordingly, under 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, this Notice of Removal is timely because it is being filed within ninety (90) days after the Petition Date.

## VENUE

32. Although Venue is proper in the Maryland Bankruptcy Court, for the reasons set forth in the motion to transfer venue filed in connection herewith, the Maryland Bankruptcy Court should transfer venue of the removed case to the Delaware Bankruptcy Court. Under 28 U.S.C. § 1452(a), venue lies for this action in the United States District Court for the District of Maryland

13

because it is the federal judicial district and division embracing the Circuit Court for Montgomery County, Maryland, where the State Court Action is pending. *See* 28 U.S.C. § 1452 (authorizing removal "to the district court for the district where such civil action is pending"). *See also* 28 U.S.C. §156(e), Federal Rule of Bankruptcy Procedure 9027, and Md. L.B. R 5001-2(e) and 9027-2.[15]

## ATTACHMENTS AND STATE COURT NOTICE

33. Under Bankruptcy Rule 9027, the Removing Defendant attaches hereto as **Exhibit C**, a copy of the docket sheet in the State Court Action as evidence that all documents filed in the State Court Action are included herein.

34. As required by Bankruptcy Rule 9027(b), the Removing Defendant will promptly give Plaintiffs written notice of the filing of this Notice of Removal, and will file a copy of this Notice of Removal with the Clerk of the Circuit Court for Montgomery County, Maryland.

35. Nothing in this Notice shall be interpreted as a waiver or relinquishment of the Removing Defendant's right to assert any defense or affirmative matter.

---

[15]  *See* Memorandum, p.3.

Where the basis for removal includes claims related to bankruptcy cases, or federal questions concerning title 11 of the United States Code (the "Bankruptcy Code"), if the underlying court case sought to be removed (the "Bankruptcy Related Removed Case") is pending in Maryland, the removal pleadings should be filed in the United States Bankruptcy Court for the District of Maryland, whether the bankruptcy case is pending in the United States Bankruptcy Court for the District of Maryland or in a bankruptcy court located in another state.

Whether the underlying bankruptcy case is pending in Maryland or a bankruptcy court in another state, the removal papers should be filed in the division (Baltimore or Greenbelt) of the United States Bankruptcy Court for the District of Maryland covering the county in Maryland where the Bankruptcy Related Removed Case is pending. See Rule 9027(a)(1), Federal Rules of Bankruptcy Procedure (hereinafter referred to as "Bankruptcy Rule ___"); 28 U.S.C. §1446(a); and Local Bankruptcy Rule 5001-2(e).[4]

14

**FINAL ORDERS**

36.     The Removing Defendant consents to the entry of final orders and/or judgments by this Bankruptcy Court.

**CONCLUSION**

All of the requirements of 28 U.S.C. §§ 1334 and 1452(a) have been satisfied, and Notice is hereby given that this State Court Action is removed from the Circuit Court for Montgomery County, Maryland, to the United States Bankruptcy Court for the District of Maryland.

Dated: February 16, 2021

                      PACIFIC LIFE INSURANCE COMPANY

                      By: /s/ Brian D. Frey
                          Brian D. Frey (D. Md. #17592)

                      ALSTON & BIRD LLP
                      Brian D. Frey
                      CPF No. 0712110268
                      The Atlantic Building 950 F Street, NW
                      Washington, DC 20004-1404
                      Tel 404-239-3067
                      Fax 404-239-3033
                      brian.frey@alston.com

                      -and-

                      David A. Wender (*pro hac vice forthcoming*)
                      Grant T. Stein (*pro hac vice forthcoming*)
                      1201 West Peachtree Street
                      Atlanta, Georgia, 30309
                      Telephone: (404) 881-7000
                      Facsimile: (404) 881-7777

                      *Counsel to Pacific Life Insurance Company*